[Cite as *In re J.M.*, 2013-Ohio-4139.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
|  | : |  |
|  | : | Hon. W. Scott Gwin, P.J. |
| IN RE J.M. | : | Hon. William B. Hoffman, J. |
|  | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
|  | : | Case No. 2013CA00104 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |


CHARACTER OF PROCEEDING:         Appeal from the Stark County Court of
                                 Common Pleas, Family Court Division,
                                 Case No. 2012JCV01142


JUDGMENT:                        AFFIRMED


DATE OF JUDGMENT ENTRY:          September 3, 2013


APPEARANCES:

For Mother-Appellant:                    For SCDJFS-Appellee:

EMILY R. TRETTEL                         LISA A. LOUY
STARK COUNTY PUBLIC DEFENDER             221 Third St. SE
201 Cleveland Ave., SW., Suite 104       Canton, OH 44702
Canton, OH 44702

*Delaney, J.*

{¶1} Mother-Appellant Scarlett Morgan fka Girt appeals the April 24, 2013 judgment entry of the Stark County Court of Common Pleas, Family Court Division to grant permanent custody of her child to Appellee Stark County Department of Job and Family Services.

## FACTS AND PROCEDURAL HISTORY

{¶2} Mother-Appellant Scarlett Morgan fka Girt is the mother of J.M., born July 21, 2012. The biological father of J.M. is unknown. The legal father of J.M. is Andrew Morgan. Andrew Morgan stipulated to permanent custody of J.M. to SCDJFS.

{¶3} On November 20, 2012, Appellee Stark County Department of Job and Family Services ("SCDJFS") filed a complaint requesting J.M. be placed in the temporary custody of SCDJFS. The complaint alleged the child to be dependent and/or neglected. On January 30, 2013, the trial court approved and adopted the case plan prepared for the family and J.M. was placed into the temporary custody of SCDJFS.

{¶4} On March 22, 2013, SCDJFS filed a motion requesting permanent custody of J.M. The trial court held a trial on April 23, 2013. The following evidence was adduced at trial.

{¶5} The caseworker assigned to the matter, Kristal Brown and her supervisor, Cindy Moore testified. Kristal Brown testified Mother has three older children. Mother's first child was adopted in Indiana after permanent custody was granted to the agency in Grant County, Indiana. The concerns in that case were that Mother had mental health issues, including suicidal ideation where she attempted to jump from a bridge while

holding her daughter. Mother did not complete the case plan in Indiana and moved to Ohio to give birth to her next child.

{¶6} Mother gave birth to her second child in Ohio. SCDJFS became involved with Mother and child after receiving information about Mother's actions in Indiana. Mother was given a case plan for the child, but Mother moved to North Carolina for three months during the case. Permanent custody of the child was granted to SCDJFS.

{¶7} Mother gave birth to a third child in Ohio. The child was removed from Mother's care and Mother was given the same case plan as for the previous child. Mother failed to complete the case plan because she moved to Tennessee to give birth to J.M. SCDJFS received permanent custody of the third child.

{¶8} At the time of J.M.'s permanent custody hearing, Mother was pregnant with her fifth child.

{¶9} Kristal Brown testified Mother was offered a case plan in the present case. It was the same case plan as offered for her two older children, but she failed to complete those plans. Her case plan required her to complete a parenting evaluation at Northeast Ohio Behavioral Health, complete a drug and alcohol assessment at Quest, and follow through with any recommendations from either agency.

{¶10} Mother did not complete a parenting evaluation with Northeast Behavioral Health for her case plan with J.M. Mother completed the drug and alcohol assessment, which recommended random urine drug screens and outpatient treatment. Mother's drug screen was negative. She was scheduled to attend a follow up appointment for the drug treatment program, but she failed to attend the appointment.

{¶11} Mother was offered visitation with J.M. Before temporary custody was awarded to SCDJFS, Kristal Brown observed Mother with J.M. and they appeared to be bonded. Kristal Brown did not observe any scheduled visitation with Mother because Ms. Brown was removed from the case after Mother and Andrew Morgan threatened to kill Ms. Brown. Mother visited J.M. three times before Mother moved to North Carolina on January 1, 2013. Mother returned to Ohio and appeared at SCDJFS on March 19, 2013. Mother requested to visit J.M., but was denied at that time because SCDJFS had filed for permanent custody. Mother requested bus passes but Cindy Moore refused to give the passes because Mother was not doing her case plan services. Mother stated she had an appointment for a parenting evaluation, but Ms. Moore called Northeast Behavioral and found no appointment had been scheduled.

{¶12} Mother contacted SCDJFS again on April 6, 2013 to inquire about plans for her unborn child.

{¶13} The guardian ad litem recommended permanent custody in favor of SCDJFS was in the best interests of the child.

{¶14} At the permanent custody trial, Mother made an oral motion for an extension of time to complete her case plan. Mother argued she had moved to stable housing and was ready to work on her case plan. The trial court denied the motion.

{¶15} Based on the evidence presented, the trial court granted the request for permanent custody on April 24, 2013. The trial court found (1) Mother abandoned J.M. by failing to visit him for a period in excess of 90 days; (2) Mother had her parental rights involuntarily terminated with respect to siblings of J.M.; (3) SCDJFS made reasonable efforts to reunify Mother with J.M. and she repeatedly failed to comply; and

(4) J.M. cannot be placed with Mother within a reasonable time, nor should he be placed with her.

{¶16} It is from this decision Mother now appeals.

**ASSIGNMENTS OF ERROR**

{¶17} Mother raises three Assignments of Error:

{¶18} "I. WAS THE TRIAL COURT'S FINDING THAT THE GROUNDS FOR PERMANENT CUSTODY WERE ESTABLISHED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE?

{¶19} "II. DID THE TRIAL COURT ERR IN DENYING APPELLANT'S MOTION FOR AN EXTENSION?

{¶20} "III. DID THE TRIAL COURT ERR IN FINDING A GRANT OF PERMANENT CUSTODY WOULD BE IN J.M.'S BEST INTEREST?"

**ANALYSIS**

*I. AND III.*

{¶21} We consider Mother's first and third Assignments of Error because they are interrelated. Mother argues the trial court erred in awarding permanent custody of J.M. to SCDJFS. We disagree.

{¶22} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161

Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶23} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

{¶24} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency.

{¶25} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the

child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶26} R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody.  In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶27} In determining the best interest of the child at a permanent custody hearing,  R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶28} Our review of the record shows the trial court's decision regarding permanency and placement was supported by clear and convincing evidence.

{¶29} First, there is no dispute Mother had her parental rights involuntarily terminated with respect to three siblings of the J.M. and Mother failed to present clear

and convincing evidence that, notwithstanding the prior termination, Mother can provide a legally secure placement and adequate care for the health, welfare, and safety of the child. R.C. 2151.414(E)(11).

{¶30} Second, the evidence shows Mother abandoned J.M. Ms. Moore testified Mother's last visit with J.M. was in December 2012. Mother left for North Carolina on January 1, 2013 and did not return until March 19, 2013. She did not see J.M. during that period, nor did she resume contact with J.M. when she returned to Ohio. For purposes of R.C. 2151.414(B)(1)(b), "abandoned" is defined by R.C. 2151.011(C), which provides that "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days."

{¶31} Third, SCDJFS made reasonable efforts to reunify Mother with J.M. and Mother repeatedly failed to comply. Mother was given the same case plan to complete as with her prior children. Mother completed the drug and alcohol assessment but did not return for a scheduled follow-up appointment. Mother did not complete the parental assessment. In March 2013, when she came to SCDJFS for bus passes, she told Ms. Moore she had made an appointment with Northeast Behavioral for her parental assessment. Ms. Moore verified no appointment had been made.

{¶32} We next turn to the issue of best interest. We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the

lives of the parties concerned." *In re Mauzy Children,* 5th Dist. Stark No.2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), citing *In re Awkal,* 85 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist.1994).  The trial court determined it was in the best interest of the child to be placed in the permanent custody of SCDJFS pursuant to R.C. 2151.414(D), and we agree.

{¶33} J.M. is currently in a foster-to-adopt home and the family has indicated they wish to adopt.  J.M. has been in their care since his removal from Mother.  Mother failed to name any possible relative placements.  The guardian ad litem recommended permanent custody to SCDJFS was in the best interests of the child.

{¶34} We find no error in granting permanent custody of J.M. to SCDJFS.

{¶35} Mother's first and third Assignments of Error are overruled.

*II.*

{¶36} Mother argues in her second Assignment of Error that the trial court abused its discretion when it denied Mother's motion for extension of permanent custody.  We disagree.

{¶37} Pursuant to R.C. 2151.415(D), an extension of temporary custody is based, in part, on whether the extension would be in the best interests of the child.  In this case, the record supports the conclusion that permanent custody to SCDJFS was in the best interests of the child.

{¶38} Mother's second Assignment of Error is overruled.

## CONCLUSION

{¶39} The three Assignments of Error of Mother-Appellant Scarlett Morgan fka Girt are overruled.

{¶40} The judgment of the Stark County Court of Common Pleas, Family Court Division is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Hoffman, J., concur.


_____
HON. PATRICIA A. DELANEY


_____
HON. W. SCOTT GWIN


_____
HON. WILLIAM B. HOFFMAN

PAD:kgb/PM5.27.13